WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br>Larry L. Miller,<br>                Debtor.<br><br>Maureen Gaughan,<br>                Appellant,<br>v.<br>First Community Bank,<br>                Appellee. | No. CV-13-02050-PHX-NVW<br>BK. 11-10746 EPB<br>ADV. No. 13-ap-00436 EBP<br><br>**ORDER** |

      This bankruptcy appeal poses the question whether an Arizona judgment against a husband on his sole and separate debt may be executed against the Arizona couple's community property in California. The answer is no, even if the original judgment had been rendered in California.

      Specifically, the Arizona federal judgment against the husband alone, later registered in a California federal court and recorded in California, does not lien their community real property in California. This is the rule by Arizona statute, and California choice of law principles yield to the Arizona rule concerning Arizona domiciliaries. California has no interest in ousting Arizona marital law concerning obligations between husband and wife

and of persons contracting with one spouse, and the California community property statute by its terms does not purport to do so.

In play here is a vital rule of Arizona marital law that community property cannot be reached to satisfy a guarantee of a debt of another unless both spouses sign.  This is an exception to the general rule that either spouse may obligate community property by acts for a community purpose without the approval or even knowledge of the other spouse.  This forty-year-old protection of the other spouse from unconsented guarantees is basic knowledge to all Arizona transaction lawyers.

Registering the judgment in California does not defeat that protection.  Although applications have sometimes diverged in apparent attempts to do equity, the general principle is clear: The substantive law of the rendering jurisdiction shapes the judgment; forum law governs enforcement consistent with the judgment.

It does not change the question or the answer that this was a federal judgment, registered in a California federal court.  The federal registration statute treats the federal court judgment the same as state court judgments are treated between sister states.  The federal judgment registration scheme does not transmogrify the Arizona federal judgment into exactly what the rendering court said it was not.

Under California law, which applies Arizona law as to who owes the judgment, the creditor bank has no judgment lien on the Arizona couple's community property in California.  The summary judgment for the bank must be reversed with directions to enter summary judgment for the Trustee.

**I.     FACTS**

The facts are undisputed.  Larry and Kari Miller are married and were domiciled in Arizona at all relevant times.  Larry Miller ("Miller") personally guaranteed a loan First Community Bank extended to his businesses.  Kari Miller did not sign the guarantee.  The bank sued Miller in this Court when the businesses defaulted and obtained judgment against Miller alone for approximately $6 million.

The bank later registered the judgment in the Northern District of California pursuant to 28 U.S.C. § 1963 and recorded it in San Francisco County where the Millers own a condominium as community property. Miller filed for bankruptcy in Arizona. The Chapter 7 Trustee, Maureen Gaughan, has sold the condominium. The bank filed this adversary proceeding for a declaration that the recordation in California created a judgment lien on the condominium. That would give the bank priority in the $600,000 net proceeds ahead of the unsecured creditors. Under California law, unlike Arizona law, a guarantee signed by one spouse may be enforced against community property. That is not because California law has a specific rule concerning unilateral guarantees but because it subjects the community estate to payment of all sole and separate debts incurred by either spouse.

The Bankruptcy Court held for the bank, stating, "Because the Miller Judgment was registered in California, California law governs the enforceability of the Miller Judgment against Debtors' community property located in California, and under California law, Debtors' community property located in California is liable for satisfaction of the Miller Judgment." Designation of Record [hereinafter "DR"] at 289. The Trustee timely appealed.

## II.   APPELLATE JURISDICTION AND STANDARD OF REVIEW

The District Court has jurisdiction pursuant to 28 U.S.C. § 158(a) of appeals from "final judgments, orders, and decrees" of the bankruptcy court. Grants of summary judgment, which turn on conclusions of law, are reviewed *de novo*. *See In re United Energy Corp.*, 102 B.R. 757, 760 (B.A.P. 9th Cir. 1989), *aff'd*, 944 F.2d 589 (9th Cir. 1991).

## III.   LEGAL ANALYSIS

### A.   Duties and powers of the Trustee

The Trustee is empowered "to manage the assets in a manner that will satisfy the creditors' claims." *In re Taylor*, 599 F.3d 880, 886 (9th Cir. 2010) (citing 11 U.S.C. §§ 701, 704). This includes a "fiduciary obligation to conserve the assets of the estate and to maximize distribution to creditors." *In re Rigden*, 795 F.2d 727, 730 (9th Cir. 1986).

The bankruptcy estate is comprised of "interests of the debtor in property," including community property over which the debtor spouse has "sole, equal, or joint management and control." 11 U.S.C. § 541(a); s*ee also In re Homan*, 112 B.R. 356, 359 (B.A.P. 9th Cir. 1989) ("The filing by a spouse of an individual bankruptcy petition creates an estate which encompasses community property that is under the spouse's joint management and control as of the date of the petition."). Whether the Millers' community property is an "interest[] of the debtor" turns on state law. *See In re Summers*, 332 F.3d 1240, 1242 (9th Cir. 2003) ("It is well established that state law determines the nature and extent of a debtor's interest in property.") (quoting *Abele v. Modern Fin. Plans Svcs., Inc., (In re Cohen)*, 300 F.3d 1097, 1104 (9th Cir. 2002)).

In both California and Arizona the law of the matrimonial domicile governs spouses' property interests. *See Sigmund v. Rea*, 226 Ariz. 373, 376, 248 P.3d 703, 706 (Ct. App. 2011) ("[T]he property rights of a husband and wife are governed by the law of the couple's matrimonial domicile at the time of the acquisition of the property.") (quoting *Lorenz-Auxier Fin. Group, Inc. v. Bidewell*, 160 Ariz. 218, 220, 772 P.2d 41, 43 (Ct. App. 1989)); *Grappo v. Coventry Fin. Corp.*, 235 Cal. App. 3d 496, 505, 286 Cal. Rptr. 714 (1991) ("As a rule, marital interests in money and property acquired during a marriage are governed by the law of the domicile at the time of their acquisition, even when such money and property is used to purchase real property in another state."). Under Arizona law, spouses have "equal management, control and disposition rights over their community property." A.R.S. § 25-214(B). Therefore, the community property condominium is an interest of the debtor within the meaning of 11 U.S.C. § 541(a)(2) and comes within the bankruptcy estate.

**B.  Arizona and California marital property law**

Because the law of the matrimonial domicile governs the Millers' respective rights and powers concerning their community property, including the power to incur debts payable from that property, California law applies Arizona law to define those rights and

powers concerning the California condominium.[1]  *See Grappo*, 235 Cal. App. 3d 496, 505, 286 Cal. Rptr. 714.  One of those Arizona rights controls here.  By statute, one spouse cannot bind community property by unilaterally guaranteeing a debt:

> C. Either spouse separately may acquire, manage, control or dispose of community property or bind the community, except that joinder of both spouses is required in any of the following cases:
>
> . . . .
>
> 2. Any transaction of guaranty, indemnity or suretyship.

A.R.S. § 25-214; *see also Consol. Roofing & Supply Co. v. Grimm*, 140 Ariz. 452, 458, 682 P.2d 457, 463 (Ct. App. 1984) ("[T]he plain meaning of A.R.S. § 25-214(C)(2) requires that both spouses must execute a guaranty in order to bind the community.").

General principles of Arizona choice of law also defer to the marital policy of other states for Arizona-located property of their domiciliaries, with an exception that would not aid the bank here.[2]  *See Lorenz-Auxier Fin. Grp., Inc. v. Bidewell*, 160 Ariz. 218, 220, 772 P.2d 41, 43 (Ct. App. 1989).

---

[1] This is a specific application of California's "governmental interest analysis" approach to conflicts of laws.  "Under this approach, California law will be applied unless the foreign law conflicts with California law and California and the foreign jurisdiction have significant interests in having their law applied. . . . Where significant interests conflict, the court must assess the 'comparative impairment' of each state's policies. . . . The law applied will be that of the state whose policies would suffer the most were a different state's law applied. . . ."  *S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981) (citations omitted).

California has no interest in applying its marital liability law to property of an Arizona couple, and by its terms the California statute does not purport to do so.  *See* Cal. Fam. Code § 760 (defining community property as "property . . . acquired by a married person during the marriage while domiciled in this state.").  If the California statute did purport to apply to property acquired while domiciled in another state, application of such a law here would impair the Arizona legislature's specific intention to "protect the substantive rights of the non-signing spouse."  *Rackmaster Sys., Inc. v. Maderia*, 219 Ariz. 60, 64, 193 P.3d 314, 318 (Ct. App. 2008).  California's general policy favoring creditors over spouses would carry little weight for a creditor dealing with an out-of-state husband and not complying with the rights of the wife or even checking into them.

[2] Where Arizona courts have departed from this principle and applied Arizona law rather than domicile state law, they were motivated to benefit spousal interests with the more favorable Arizona rule.  In *Phoenix Arbor Plaza, Ltd. v. Dauderman*, 163 Ariz. 27, 785 P.2d 1215 (Ct. App. 1989), a California husband gave a unilateral guarantee in a transaction in Arizona.  The court denied enforcement of the guarantee against Arizona-located community property of the California couple, giving the wife the benefit of Arizona law that "expanded her community property right protection."  *Id.* at 31, 785

The rights between spouses and as against creditors dealing with a spouse are substantive rights. *See Rackmaster Sys., Inc. v. Maderia*, 219 Ariz. 60, 65, 193 P.3d 314, 315 (Ct. App. 2008) (noting A.R.S. § 25-214(C)(2) "confers substantive rights on each Arizona spouse"). They effectuate critical substantive policies concerning marriage and spousal equality in any decision to risk the family's financial past and future for the benefit of another. *See id.* at 63, 193 P.3d at 317 (explaining the purpose of A.R.S. § 25-214(C)(2) is "to protect one spouse against obligations undertaken by the other spouse without the first spouse's knowledge and consent," and "this purpose would be frustrated if the husband . . . were able to charge the wife's interest in the community with the debts he guaranteed") (quotation marks omitted).

Those substantive rights cannot be forfeited by one spouse acting alone. *See Lorenz-Auxier*, 160 Ariz. at 221, 772 P.2d at 44 (rejecting the power of one spouse to "alter the rights and liabilities of his marital community, irrespective of the protective policies of the state of domicile, by simply choosing to contract in another forum and by contractually consenting to the application of that forum's laws"); *accord G.W. Equip. Leasing, Inc. v. Mt. McKinley Fence Co., Inc.*, 97 Wash. App. 191, 198, 982 P.2d 114, 118 (1999) (applying A.R.S. § 25-214(C)(2) despite the signing spouse's agreement that Washington law apply). For this reason, the guarantee's "Obligations of Married Persons" and "Governing Law" provisions, purporting to allow recourse against community property and to consent to

---

P.2d at 1219; *see also id.* at 33, 785 P.2d at 1221 (Voss, J., concurring) (disagreeing with majority's presumed application of the law of the marital domicile "[i]f the out-of-state non-signing marital partner's property rights are 'restricted, reduced, or jeopardized' by the signing party's acts in Arizona").

*Dauderman* may be read as a narrow exception favoring the more equitable substantive rule where the policy of the domicile state hostile to the spouse is not strong and the policy of the forum state in favor of spouses is strong. The California "governmental interest analysis" for choice of law would arguably reach the same result, though the question could not arise in California because its law is not the one more favorable to the spouse. The narrow exception of *Dauderman*, favoring forum law if it better protects the out-of-state spouse's community property in the forum state, would be turned on its head if used to defeat domicile state law that protects the community.

application of California law "without regard to its conflicts of law provisions," are ineffective as against the rights of the non-consenting spouse. DR at 41–42.

Miller's personal guarantee of the bank loan could not obligate the marital community property. This Court so stated that when it entered the original judgment against him alone. *See* DR at 183 ("[T]he complaint seeks no adjudication of liability of the marital community, and any such liability appears to be precluded by A.R.S. § 25-214(C)(2).").[3]

In stark contrast to Arizona, California law does not provide such protection to spouses and the community estate. *See* Cal. Fam. Code § 910(a); Cal. Civ. Proc. Code § 695.020. In California "the liability of community property is not limited to debts incurred for the benefit of the community, but extends to debts incurred by one spouse alone exclusively for his or her own personal benefit." *Lezine v. Sec. Pac. Fin.*, 14 Cal. 4th 56, 64, 925 P.2d 1002 (1996); *see also* 5 Miller and Starr, Cal. Real Est. § 12:63 (3d ed.) ("The community property is liable for any debt incurred by either spouse before or during marriage, whether based on contract, tort, or otherwise, and whether one or both spouses are parties to the debt or to a judgment for the debt."); *id.* ("The liability of the community property is not limited to debts incurred for the benefit of the community."). Because either California spouse can obligate the community property for separate debts, a judgment against a unilaterally guaranteeing spouse may be satisfied from community property governed by California law like any other sole and separate liability. *See Phoenix Arbor Plaza, Ltd. v. Dauderman*, 163 Ariz. 27, 28, 785 P.2d 1215, 1216 (Ct. App. 1989) (noting that under California law a guarantee signed by only one spouse exposes community property to liability).

---

[3] Even if the underlying debt were a community obligation, a judgment does not run against community property unless both spouses are parties to the judgment. *See* A.R.S. § 25-215(D) ("In an action on [a debt or obligation contracted for the benefit of the community] the spouses shall be sued jointly . . . ."). This Court consciously dropped Kari Miller from the judgment, doubly preventing it from reaching community property.

On the bank's view, domesticating the Arizona judgment in California supplanted Arizona's community property law with California's and exposed the condominium to satisfaction of the husband's sole and separate debt. But this interpretation is at odds with choice of law principles, full faith and credit, and California law for enforcing foreign judgments.

### C. State registration and enforcement

Like the Uniform Enforcement of Foreign Judgments Act, California's Sister State Money Judgments Act simplified the process of bringing a local action on a foreign judgment. *See Kahn v. Berman*, 198 Cal. App. 3d 1499, 1507, 244 Cal. Rptr. 575, 579 (1988) (citing Cal. Civ. Proc. Code § 1710 *et seq*.); *see also* Cal. Civ. Proc. Code § 1710.25 editors' notes ("Section 1710.25 is similar to Section 2 of the revised Uniform Enforcement of Foreign Judgments Act of 1964 which requires the clerk to file a sister state judgment and treat it in the same manner as a judgment of his state."). Statutory compliance creates a California judgment, and "the new judgment has the same effect as an original California money judgment and 'may be enforced or satisfied in like manner.'" *Kahn*, 198 Cal. App. 3d at 1507, 244 Cal. Rptr. at 579 (citing Cal. Civ. Proc. Code § 1710.35).

But the statute applies forum law for *enforcement* purposes only. *See* Cal. Civ. Proc. Code § 1710.35 editors' notes ("Section 1710.35 provides that a judgment entered pursuant to this chapter is to be treated as a judgment of the superior court for purposes of enforcement."); *see also Weir v. Corbett*, 229 Cal. App. 2d 290, 293, 40 Cal. Rptr. 161, 163 (1964) ("In giving judgment the California court made available to plaintiff the various California procedures for the enforcement of such a duty. The method of enforcement of a foreign judgment is governed by the law of the forum.") (quotation marks omitted). This reflects the common law principle that execution can only be under the local court's processes. *See Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 235 (1998) (citing *McElmoyle, for Use of Bailey v. Cohen*, 38 U.S. 312, 324 (1839), for the proposition that "[e]nforcement measures do not travel with the sister state judgment as preclusive effects

do; such measures remain subject to the evenhanded control of forum law"); *see also Fink v. O'Neil*, 106 U.S. 272, 284 (1882).[4]

Domestication does not—and under principles of full faith and credit it cannot—alter the substance of the foreign judgment or create a liability where none existed. *Cf. Weir*, 229 Cal. App. 2d at 294, 40 Cal. Rptr. at 164 ("[T]he foreign judgment defines the duty which is to be enforced.") (citing *Gilmer v. Spitalny*, 84 Cal. App. 2d 39, 189 P.2d 744 (1948)). Although "the new judgment will have greater efficacy as a remedy" because an Arizona court could not issue a writ of execution against California property, a California-registered judgment "will not have any greater effect, as an adjudication of the rights and duties of the parties, than it had in the state where rendered." *Id.* at 295, 40 Cal. Rptr. at 164. Domestication cannot make the marital community a new *de facto* judgment debtor.

The bank objects that "California law expressly provides that a judgment against only one spouse can be enforced against both spouses' California community property."

---

[4] Arizona's registration statute is to the same effect:

> A copy of any foreign judgment authenticated in accordance with the act of Congress or the statutes of this state may be filed in the office of the clerk of any superior court of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the superior court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a superior court of this state and may be enforced or satisfied in like manner.

A.R.S. § 12-1702.

Tracking the Uniform Act, Arizona's foreign judgment–registration statute applies Arizona enforcement procedures. *See Citibank (S. Dakota), N.A. v. Phifer*, 181 Ariz. 5, 6, 887 P.2d 5, 6 (Ct. App. 1994) ("[F]iling a judgment under the Uniform Act domesticates it for purposes of enforcement."). But registration cannot limit or alter the judgment itself:

> The purpose of the Uniform Act is to provide the enacting state with a speedy and economical method of enforcing foreign judgments so as to prevent the cost and harassment that would result if further litigation were required. The Uniform Act does not create substantive rights. It is an act creating procedures for enforcing rights conferred by the Full Faith and Credit Clause of the United States Constitution.

*Id.* (citation omitted).

Doc. 12 at 13. But "California community property" means, subject to exception, "all property, real or personal, wherever situated, acquired by a married person during the marriage *while domiciled in this state . . . .*" Cal. Fam. Code § 760 (emphasis added). California has elected to expose its own domiciliaries' community property to the other spouse's sole and separate debts, which include unilateral guarantees. It has not so elected for Arizona couples, who marry and live under different expectations set by their own legislature. Under California law respecting foreign judgments, forum rules do not create duties contrary to the judgment itself or transmute Arizona community property into California community property for purposes of applying the California liability rules.

The bank's analysis parallels one rejected long ago in *Gilmer v. Spitalny*, 84 Cal. App. 2d 39, 189 P.2d 744 (1948). There, creditors sought to enforce an Arizona-rendered judgment on a community debt against a wife's separate property in California despite conceding the separate property could not be reached under Arizona law. The court in *Gilmer* rejected the creditors' argument because it would expand the judgment. The case is summarized in *Weir*:

> *Gilmer* . . . was an action upon an Arizona judgment which, by its terms, was payable only out of the community property of the defendants. The appellate court held it was error to enter a California judgment against the defendant wife which would be payable out of her separate property. The duty adjudged by the Arizona court was not the wife's duty except insofar as it affected her share of property under the legal control of her husband. Thus the Arizona judgment did not provide evidentiary support for a personal judgment against the wife.

*Weir*, 229 Cal. App. 2d at 294, 40 Cal. Rptr. at 164. The bank pursues a similar expansion here, and it fails for the same reason the expansion failed in *Gilmer*.

The bank principally relies on two cases for execution on property that would have a different marital law character in the judgment-rendering state. Both cases are distinguishable. In *National Bank of Arizona v. Moore*, 138 N.M. 496, 122 P.3d 1265 (Ct. App. 2005), the court upheld garnishment under New Mexico community property principles of the husband's divisible one-half interest in a community property bank

- 10 -

account. Under Arizona community property law neither spouse has a divisible interest in community property, and none of it can be reached for a sole and separate debt incurred while married. But in reaching that result the court expressly declined to decide whether "the law applicable to the enforcement of the judgment . . . depends on whether the bank account is Arizona community property as opposed to New Mexico community property," holding the issue waived. *Id.* at 499, 122 P.3d at 1268. The issue is not waived in this case. The judgment creditor in *American Standard Life & Accident Insurance Co. v. Speros*, 494 N.W.2d 599 (N.D. 1993), successfully garnished property created in the forum state (husband's wages and rent from local property), which was not the proceeds of property originating in the marital domicile. These circumstances marginalize both cases as precedent for the broad proposition the bank asserts. If they stand for a broader proposition beyond their circumstances, they are unpersuasive.

California law does not allow an Arizona judgment against an Arizona spouse that cannot be satisfied from community property in Arizona nevertheless to be executed against their community property located in California.

### D.     Federal rules for registration and enforcement

The bank argued, and the Bankruptcy Court agreed, that registration of the Arizona federal judgment in the California federal court ousted Arizona law that the judgment runs only against Miller's sole and separate property. Instead, they say, California marital law makes the Millers' community property located in California executable for Miller's sole and separate judgment. Registering a federal judgment works no such alchemy, turning base metal into gold by crossing a state line. What starts out base or gold stays base or gold, wherever it moves in the federal courts. The effect of registering a federal judgment in a new district is the same as domesticating a sister state judgment directly in the state court.

> Federal procedure adopts state procedures for execution of a money judgment:
> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of

> the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a)(1). "Federal Rule of Civil Procedure 69 governs procedures on execution of a judgment and, for the most part, directs the district court to look to state rules." *Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 700 (9th Cir. 2010).

Before Congress authorized registration of federal judgments, "a successful litigant in federal court who wanted to execute on a judgment in another district had to bring a separate action on the judgment." Hershel Shanks & Steven A. Standiford, *Schizophrenia in Federal Judgment Enforcement: Registration of Foreign Judgments Under 28 U.S.C. S 1963*, 59 Notre Dame L. Rev. 851, 857 (1984). "To provide a simple, inexpensive and expeditious means to enforce federal money judgments," *id.*, Congress enacted 28 U.S.C. § 1963, under which a party may register and enforce a federal judgment in another district:

> A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. Such a judgment entered in favor of the United States may be so registered any time after judgment is entered. *A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.*
>
> A certified copy of the satisfaction of any judgment in whole or in part may be registered in like manner in any district in which the judgment is a lien.
>
> The procedure prescribed under this section is in addition to other procedures provided by law for the enforcement of judgments.

28 U.S.C. § 1963 (emphasis added). Rule 69 and § 1963 have the same effect, "providing that the procedure on execution is to be in accordance with the procedure of the state in which the district court is located at the time the remedy is sought." *Hilao v. Estate of Marcos*, 536 F.3d 980, 987–88 (9th Cir. 2008).

This system of enforcing out-of-state federal judgments parallels the California and Arizona systems for enforcing sister state judgments, with the same procedural

consequences and no substantive consequences. Like them, the federal scheme applies the state law of the registration district to determine how the judgment may be executed and which assets *of the judgment debtor* can be reached, but not who is liable for the judgment. The underlying judgment determines that.

The bank's generic case authorities do not support any different interpretation of the federal judgment scheme. Some cases stand only for the proposition that the registration forum's enforcement procedures and remedies govern execution.[5] Cases about expiration of successive registrations have no relevance here.[6] It starts but does not end the analysis to say, "Registering a judgment under § 1963 is the functional equivalent of obtaining a new judgment of the registration court," *In re Estate of Ferdinand E. Marcos Human Rights Litig.*, 536 F.3d 980, 989 (9th Cir. 2008), or, "Once a judgment has been registered, state law determines which assets may be reached." *Pac. Reinsurance Mgmt. Corp. v. Fabe*, 929 F.2d 1215, 1219 (7th Cir. 1991). In none of these cases did federal registration amend the substance of the judgment.

## IV.   CONCLUSION

The sole and separate judgment against the Arizona husband cannot be executed against the community property condominium in California. The underlying Arizona judgment foreclosed community liability. A California court would apply the same Arizona community property law and enforce the judgment according to its Arizona meaning. It would do so under its general principles of choice of law and because the different California community property statute by its terms applies only to property acquired while domiciled in California. Neither 28 U.S.C. § 1963 nor Federal Rule of Civil Procedure

---

[5] *See Condaire, Inc. v. Allied Piping, Inc.*, 286 F.3d 353 (6th Cir. 2002); *Johns v. Rozet*, 826 F. Supp. 565 (D.D.C. 1993); *United States v. Miller*, 229 F.2d 839, 841 (3d Cir. 1956).

[6] *See Del Prado v. B.N. Dev. Co., Inc.*, 602 F.3d 660 (5th Cir. 2010) (allowing a federal judgment rendered in Hawaii to be registered in Texas even though it had expired in Hawaii because it was still live in Illinois, where it had been registered first); *In re Estate of Ferdinand E. Marcos Human Rights Litig.*, 536 F.3d 980 (9th Cir. 2008); *Stanford v. Utley*, 341 F.2d 265 (8th Cir. 1965) (Blackmun, J.).

69(a) changes that.  The bank did not acquire a judgment lien on the Millers' community property condominium in California.

IT IS THEREFORE ORDERED that the Clerk enter judgment reversing the summary judgment of the Bankruptcy Court (Bankr. Doc. 25; DR at 286–289) and remanding with direction to enter summary judgment for the Appellant Trustee and against Appellee First Community Bank.  The Clerk shall terminate this appeal.

Dated this 26th day of August, 2014.

_____
Neil V. Wake
United States District Judge